**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRANDY TRIMM,**

                                        **Plaintiff,**

          **vs.**                                          **7:13-cv-00961**
                                                           **(MAD)**

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security,*

                                        **Defendant.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**OFFICE OF PETER W.**                       **PETER W. ANTONOWICZ, ESQ.**
**ANTONOWICZ, ESQ.**
148 West Dominick Street
Rome, New York 13440
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**          **JOSHUA L. KERSHNER, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action on August 12, 2013, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking review of a decision of the Commissioner of Social Security denying

Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI").  *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is April 17, 1979, and she was twenty-three years old at the time of the alleged onset of disability, September 10, 2002. *See* Dkt. No. 9, Administrative Transcript ("T."), at 293-94, 297-300. Plaintiff's education included the completion of eleventh grade, *see id.* at 50, and training as a certified nursing assistant ("CNA"). *See id.* at 93. She has not ever obtained a general equivalency diploma. *See id.* at 93. Beginning in 2000, Plaintiff was employed by Rome Memorial Hospital as a CNA and unit clerk in the nursing home. *See id.* at 360. On April 20, 2002, Plaintiff felt a popping sensation with pain when she squatted down to lift a resident's leg into bed. *See id.* at 386. Plaintiff was treated by her primary care physician, Dr. Pisaniello, who sent Plaintiff for physical therapy, but the therapy did not provide relief.[1] *See id.* Plaintiff was out of work for over nine weeks due to this injury, but she returned to her nursing home employment, which continued through September 10, 2002. *See id.* at 386, 430. On that day, while she was assisting a resident into bed, she experienced a sharp pain in her low back and left hip. *See id.* at 387. The administrative record indicates that Plaintiff sought out treatment as early as September 13, 2002 and was diagnosed with lumbosacral strain with radiculopathy. *See id.* at 424-30.

Plaintiff filed a workers' compensation claim related to this injury, and the claim was settled in 2006. *See id.* at 76. After Plaintiff was injured on the job as a CNA, she did not ever return to that type of work, but she did engage in part-time work. *See id.* at 310-11. Plaintiff worked as a bartender and for a company named Advanced Wireless Solutions in 2003, as a

---

[1] Plaintiff's medical care and treatment by Dr. Pisaniello and her April 20, 2002 injury is only referenced within workers' compensation records.

bartender and as a cashier for Stewarts Shops in 2004, and as a bartender one weekend in 2006.[2]
*See id.* at 98, 310-11.

On February 1, 2008 and May 5, 2008, Plaintiff protectively filed applications for DIB
and SSI claiming a period of disability that started on September 10, 2002. *See id.* at 293-94,
297-300, 345. These applications were both initially denied in notices dated July 15, 2008 and
July 17, 2008. *Id.* at 126-41.[3] Plaintiff filed a written request for a hearing on August 14, 2008,
and the case was assigned to Administrative Law Judge Scott C. Firestone. *See id.* at 146-47. A
video hearing was held on April 18, 2011 (*id.* at 48-86), and Administrative Law Judge Firestone
issued a decision dated May 17, 2011, finding that Plaintiff was not disabled. *See id.* at 105-17.
Plaintiff requested review, and the Appeals Council remanded the claim back to the ALJ for
further action. *See id.* at 122-24, 217, 231-32. On remand, the ALJ was directed to further
consider whether Plaintiff has a severe mental impairment because severe impairments of bipolar
and depressive disorders were not consistent with an assessment that Plaintiff had "'none to mild'
limitations in her activities of daily living; mild difficulties in social functioning; mild difficulties
in concentration, persistence, or pace; and no episodes of decompensation." *See id.* at 123.

On remand, the claim was assigned to Administrative Law Judge Elizabeth W. Koennecke
("ALJ"), and a second hearing was held on June 19, 2012. *See id.* at 86-102. The ALJ issued a
decision on August 14, 2012 finding Plaintiff was not disabled and denying Plaintiff's
applications for DIB and SSI. *See id.* at 20-39. Request for review by the Appeals Council was

---

[2] It was determined by the ALJ that Plaintiff's work activity did not rise to the level of
substantial gainful activity. This is not disputed by either party.

[3] The administrative transcript does not contain a copy of the Notice of Disapproved
Claim, dated July 17, 2008, despite that a document with that title was filed.

timely filed, and, on July 11, 2013, the request was denied, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1-6.

The ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity after September 10, 2002; (2) Plaintiff's bipolar disorder, degenerative disc disease of the lumbar spine, and opiate dependence were severe impairments; (3) Plaintiff impairments, alone or in combination, did not meet or medically equal a listed impairment under 12.04 (Affective Disorders) or 12.09 (Substance Addiction Disorders) of 20 C.F.R. Part 404, Subpt. P, App. 1; (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work with the ability to frequently understand, carry out, and remember simple instructions, frequently respond appropriately to supervision, co-workers, and usual work situations, and frequently deal with changes in a routine work setting; (5) Plaintiff was capable of performing past relevant work as a cashier as that job is usually performed; and (6), in the alternative, there are other jobs existing in the national economy that she is also able to perform. *See id.* at 20-39.

Plaintiff commenced this action for judicial review of the denial of her claim by the filing of a complaint on August 12, 2013. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 13, 15. Having review the administrative transcript, the Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). The Court must examine the administrative transcript to determine whether the correct legal standards were

applied and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and it is not permitted for the courts to substitute their analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Analysis**

*1. Five-step analysis*

For purposes of both DIB and SSI, a person is disabled when she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating these disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the [Social Security Administration] bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (internal citations omitted)).

### 2. Development of the record

Plaintiff claims that the ALJ did not properly develop the record at the second step, finding that opiate dependence was a severe impairment. *See* Dkt. No. 13. According to Plaintiff, her opiate dependence was not noted to be a continuing issue and not associated with any particular limitations. *See id.* Plaintiff claims that the ALJ failed to develop any evidence to support the finding that opiate dependence is a continuing impairment. *See id.* It is not clear to the Court whether Plaintiff is claiming that opiate dependence was not support by substantial evidence and wrongly cited as a severe impairment, or if Plaintiff is claiming that further development of opiate dependence was warranted. In either case, the Court finds that substantial evidence supported the ALJ's findings that opiate dependence qualified as a severe impairment and that the ALJ has sufficiently developed the administrative record about this impairment.

The submitted records and those obtained pursuant to authorizations set forth a medical history of opiate use in the form of hydrocodone from July 2002 through July 2010, which was prescribed by her primary care providers at Boonville Family Care and South Lewis Health Center. *See* T. at 472, 479, 481, 484-85, 488, 498, 500, 502, 507, 510, 514, 516, 518, 520, 526, 534, 544-45, 557, 559-60, 589, 594-95, 601, 645, 649, 654. The records indicate that Plaintiff

was accused of substance abuse in family court, and, subsequently, failed a urine drug screen for benzodiazepines. *See id.* at 589, 611, 622, 638, 645, 649, 654. As a result, it was agreed that her primary care physicians would cease prescribing any more opiate-based medications, among other things. *See id.* It was determined by Deborah Widrick, a credentialed alcoholism and substance abuse counselor, that Plaintiff met the criteria for an opiate dependence diagnosis in February 2011. *See id.* at 653.

The purpose of the severity regulation was to create a "threshold determination of the claimant's ability to perform basic, generically defined work functions, without at this stage engaging in the rather more burdensome medical-vocational analysis required by [42 U.S.C.] § 423(d)(2)(A)." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995). In *Bowen v. Yuckert*, the Supreme Court upheld this regulation to screen out *de minimis* claims – those claims where there are "slight abnormalities that do not significantly limit any 'basic work activity.'" *Bowen*, 482 U.S. at 158 (O'Connor, J. concurring). Accordingly, the record contains substantial evidence to support the ALJ's finding that opiate dependence was more than a *de minimis* impairment and met the step-two threshold warranting further analysis.

To the extent that Plaintiff contends that the ALJ was biased against Plaintiff either because of an opiate dependence or a misunderstanding with Plaintiff's counsel about the development of the record on remand, Plaintiff should have raised her concerns to the Appeals Council. *See* 20 C.F.R. §§ 404.940, 416.1440; *Aden v. Barnhart*, No. 01 Civ. 5170, 2003 WL 21361723, *2 (S.D.N.Y. June 12, 2003); *Kendrick v. Sullivan*, 784 F. Supp. 94, 99 (S.D.N.Y. 1992). The regulation provides a procedure to raise claims of bias, and Plaintiff "was obliged" to follow that procedure because the regulation "contemplates that factfinding with respect to claims of bias take place [] at the agency level, and that judicial review of bias claims take place in

review proceedings." *Aden,* 2003 WL 21361723, at *2. The failure to raise this issue to the Appeals Council is not jurisdictional and does not preclude this Court from reviewing Plaintiff's claim of bias. *See Pronti v. Barnhart*, 339 F. Supp. 2d 480, 495 (W.D.N.Y. 2004); *Kendrick*, 784 F. Supp. at 99. The Court, upon review of the administrative record, found that the ALJ's inquiry to Plaintiff about any abuse of medication was factual and brief, as was the ALJ's discussion in her decision. *See* T. at 17-46, 101. Further, the hearing transcript indicates that the ALJ had independently developed the record prior to the hearing and advised Plaintiff that she will take care of contacting Plaintiff's treating physicians at the conclusion of the hearing. *See id.* at 91, 101. Accordingly, the Court does not find any basis for Plaintiff's claims that the ALJ exhibited any bias against her.

If Plaintiff's contention is that the record was not sufficiently developed by the ALJ, Plaintiff does not indicate where in the medical evidence were continuing issues or complications related to opiate dependence. The psychiatric and primary care records provided from 2011 forward do not indicate that opiate dependence is an ongoing condition or concern. *See* T. at 584-722, 748, 757-76. Plaintiff testified that there were only allegations of substance abuse and that she did not have any addiction to her medication. *See id.* at 66, 101. While the ALJ certainly has an obligation to adequately develop the administrative record, the Court finds that there was no indication that the record was not fully development as it related to opiate dependency because Plaintiff's medical records did not have any obvious gaps and appeared complete. Plaintiff did not indicate anywhere that opiate dependence was a continuing condition, and Plaintiff testified at her hearing that she did not ever have any addictions to her medication. *See Schaal*, 134 F.3d at 505; *Wilson v. Comm'n of Soc. Sec.*, No. 6:13-cv-643, 2014 WL 4826757, *4 (N.D.N.Y. Sept. 29, 2014).

### 3. *Listed impairment*

Plaintiff contends that her psychiatric symptoms, noted by psychiatric professionals, including Dr. Knudsen and Dr. Fogelman, establish that her impairment meets or medically equals the listed impairment of affective disorder under section 12.04 of 20 C.F.R. Part 404, Subpt. P, App. 1. *See* Dkt. No. 13. The regulation defines affective disorders to be "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. "The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." *Id.* Plaintiff's medical records documenting her depressive symptoms satisfy Part A of the regulation, and it does not appear that the ALJ considered this matter to be in dispute. *See* T. at 413-16, 497-522, 531-32, 539-65, 566-71, 645-66, 667-722. The ALJ found that Plaintiff's impairment did not meet or medically equal the listing requirements in Part B or Part C of the regulation. *See id.* at 32-33.

Part B requires a showing that Plaintiff's depressive, manic, or bipolar symptoms resulted "in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04(B); *see also Corson v. Astrue*, 601 F. Supp. 2d 515, 528-29 (W.D.N.Y. 2009). Part C requires a

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be

> predicted to cause the individual to decompensate; or 3. Current
> history of 1 or more years' inability to function outside a highly
> supportive living arrangement, with an indication of continued need
> for such an arrangement.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04(C)*; see also Corson*, 601 F. Supp. 2d at 528-29.

The medical evidence indicates that Plaintiff's symptoms of depression began in 2005, and she sought treatment from her primary care provider at the Boonville Medical Office in November of that year. *See id.* at 511-15. She had never previously been on medication for depression, but she was diagnosed with depression and given a prescription for Zoloft. *See id.* At her return visits with this provider, Plaintiff's dosages were adjusted, and, in April 2006, Plaintiff reported that her depression was improved. *See id.* at 497-522. One of Plaintiff's primary care physicians, Dr. Taylor, provided an RFC assessment on December 29, 2008, which indicated that Plaintiff suffered from symptoms of depressive syndrome, manic syndrome, and bipolar syndrome. *See id.* at 532. The assessment also noted that Plaintiff had difficulties of concentration, persistence, or pace resulting in frequent failure to complete tasks. *See id.* at 532. In this assessment, Dr. Taylor did not check off other assessment options on the form which included, marked restriction of daily activities, marked difficulties in maintaining social functioning, or repeated episodes of deterioration or decompensation. *See id.*

Plaintiff underwent a consultation in May 2008 with psychologist, Dr. Kristen Barry, and reported that she had no history of psychiatric hospitalizations, treatment, or counseling beyond her prescription for Zoloft that was managed by her family care physician. *See id.* at 413-16. Plaintiff reported that she socializes with friends and that she has hobbies and interests. *See id.* at 415. The mental status examination states that Plaintiff was dressed appropriately, exhibited good hygiene and grooming, presented with adequate social skills, and maintained appropriate eye contact. *See id.* at 414. Plaintiff's speech was fluent and clear with adequate expressive and

receptive language skills. *See id.* at 414. Her though process was coherent, and she demonstrated appropriate affect, relaxed and calm mood, and orientation. *See id.* at 415. Dr. Barry stated that Plaintiff was capable of following and understanding simple directions and instructions, maintaining her attention and concentration, making appropriate decisions, and relating adequately with others. *See id.* at 415-16.

On July 11, 2008, a review of medical records was performed by Dr. Alan Hochberg, a reviewing psychologist for the Administration, and it was his opinion that Plaintiff had an affective disorder that was not severe. *See id.* at 354-57. On August 5, 2009, Plaintiff underwent a psychological evaluation by Dr. Thomas Knudsen, a psychologist, related to a custody matter in family court and, therefore, the evaluation related to the danger Plaintiff presented to her children. *See id.* at 691-97. However, under mental status examination, Dr. Knudsen observed that the plaintiff was appropriately dressed, well groomed, and oriented in all spheres. *See id.* at 694. Although her mood appeared to be anxious with flat affect, Plaintiff did not have any homicidal or suicidal ideations or hallucinations. *See id.* Plaintiff's memory was grossly intact. *See id.*

On April 15, 2010, Plaintiff was admitted to St. Elizabeth Medical Center after her mother brought her to the emergency department reporting that she was in a psychotic state. *See id.* at 566-71. She was held involuntarily, but the records indicate that there was a significant discrepancy between Plaintiff's and her mother's account of the events leading up to the hospital visit. *See id.* Plaintiff was discharged on April 19, 2010. *See id.* In January 2011, Plaintiff underwent an initial psychiatric evaluation by Dr. Steven Fogelman, a psychiatrist, and continued to receive treatment from him through December 2011. Dr. Fogelman diagnoses of Plaintiff included anxiety disorder, bipolar disorder, and post-traumatic stress disorder. *See id.* at 667-76, 698-722. Dr. Fogelman completed an affective disorder questionnaire on December 3, 2011 that

indicated that Plaintiff exhibited symptoms of depressive, manic, and bipolar syndromes. *See id.* at 748. However, he did not find that these symptoms resulted in any of the four categories in Part B of the regulation. *See id.*

Contrary to Plaintiff's contention, the medical evidence of Plaintiff's mental health impairments do not meet or medically equal the requirements in Part B or C of the listed impairment for affective disorders. At most, her primary care physician found that Plaintiff had difficulties in concentration, persistence, or pace resulting in frequent failure to complete tasks but that alone is not sufficient. Accordingly, this Court finds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments do not meet or medically equal the listed impairment for affective disorders.

### *4. Treating physician rule*

Plaintiff contends that the opinions of Dr. Martinucci, a treating pain management specialist, and Dr. Taylor, a treating primary care provider, were not given appropriate weight by the ALJ, and, as a result, Plaintiff's RFC was improperly determined. *See* Dkt. No. 13. Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of a claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with substantial evidence." *See Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) (internal citations omitted).

When an ALJ does not assign a treating physician's opinion controlling weight, she or he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw*, 221 F.3d at 134. "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

Here, the ALJ gave no weight to the assessment of Plaintiff's treating physician Dr. Martinucci, a pain management specialist, and gave little weight to the assessment of Plaintiff's treating physician, Dr. Taylor, a primary care physician. *See* T. at 37  The ALJ stated the following reasons for doing so: (1) the "check a box" forms submitted by both physicians contained little to no commentary by the physicians to support Plaintiff's limitations; (2) both

physicians' assessments contradicted their own treatment records and clinical findings; (3) both physicians saw Plaintiff for a limited number of visits over a relatively short period of time; (5) both physicians' assessments were inconsistent with the record on a whole; and (6) Dr. Martinucci did not respond to the ALJ's request for additional information. *See id.* at 37-38.

Plaintiff sought out treatment from Dr. Robert Martinucci, a pain management specialist. *See id.* at 723. She was evaluated on March 25, 2011, September 16, 2011, and October 7, 2011 and underwent epidural injections at two of those visits. *See id.* at 723-47, 749-56. Dr. Martinucci lists only subjective findings in the March 25, 2011 note, which indicated Plaintiff's complaints of pain in the lumbosacral spine regions. *See id.* at 728. In September 2011, Dr. Martinucci includes an objective findings paragraph related to Plaintiff's report of pain, and a subjective paragraph that indicates his observation that Plaintiff was in no apparent distress. *See id.* at 750. At the last visit, Dr. Martinucci did not prepare a progress note but there is a procedure form indicating that Plaintiff underwent a second round of injections on October 7, 2011. *See id.* at 756. In addition, Dr. Martinucci completed two medical source statements on September 16, 2011 and August 31, 2012. *See id.* at 746-47, 791.

Dr. Taylor saw Plaintiff for a medication adjustment visit on September 27, 2007 and noted that Plaintiff was in no distress with tender lumbosacral muscles. *See id.* at 481. Plaintiff returned on November 29, 2007 and the physical exam findings did not mention any back pain but noted that Plaintiff was not in any acute distress. *See id.* at 479. Plaintiff was seen on December 29, 2008 for the purpose of having the social security paperwork completed. *See id.* at 534. Dr. Taylor, under those sections entitled review of systems and physical examination, does not mention Plaintiff's back pain. *See id.* Dr. Taylor only mentions that Plaintiff has chronic back pain under the section for assessment and plan. *See id.* At Plaintiff's visit on January 31, 2008,

Dr. Taylor states again that Plaintiff was in no acute distress and that her chronic pain was improving. *See id.* at 477.

Plaintiff's treatment with Dr. Martinucci on three occasions over less than a seven-month period and her treatment with Dr. Taylor on four occasions over fifteen months, was appropriately noted and considered by the ALJ in giving no weight and little weight, respectively, to these providers' opinions. *See id.* at 477, 479, 481, 534, 723-79. The frequency of examination by a treating source is one of the factors that the Commissioner must consider in determining the weight to give to the source's opinion. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("[T]he more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

It was appropriate for the ALJ to consider that Dr. Taylor's assessment was not well supported by her treatment records and that Dr. Martinucci's treatment records were contradictory to his assessments. The nature and extent of the treatment relationship and the evidence in support of the treating physician's opinion are factors that must also be considered. *See* 20 C.F.R. § 404.1527(c)(2)(ii), (iii). Greater weight is given where the medical source has more knowledge about a plaintiff's impairment and where particular medical signs and laboratory findings support their opinion. *See id.* This Court's review of the records indicates that Dr. Taylor scarcely mentions Plaintiff's back pain, notes that Plaintiff is not in distress at each visit, does not provide any assessment of Plaintiff's physical limitations within the treatment records, but then Dr. Taylor's assessment summarily checks off specific details about Plaintiff's limitations due to back pain. *See* T. at 529. Dr. Martinucci's treatment records contradict themselves where he notes that Plaintiff appeared to be in no distress but then checks off on the medical source statement that Plaintiff's pain is "incapacitating." *See id.* at 724, 747. The ALJ also sent a request to Dr.

Martinucci to further inquire about the basis of his assessment, and she did not receive any response. *See id.* at 38. Further, Dr. Taylor and Dr. Martinucci both state on their respective assessments that Plaintiff is only able sit for one hour or less during an eight-hour day. *See id.* at 529, 746. However, Plaintiff testified that she is able to sit upright in a computer-like setting for four hours in an eight hour day. *See id.* at 81.

The ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), but it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Hudson v. Colvin*, Civil Action No. 5:12-44, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence."), *adopted by* 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013). Although not explicitly addressed under the treating physician analysis, the ALJ identified and discussed the medical findings of other examining physicians and medical providers within her decision, including Dr. Robert Bryla and Dr. Kalyani Ganesh. Upon review of the medical evidence set forth below, the Court finds that the assessments of Dr. Taylor and Dr. Martinucci are not consistent with the medical evidence within the administrative record.

On November 18, 2002, Plaintiff underwent an independent medical examination by Dr. Bryla, a chiropractor. *See* T. at 440. After performing an examination and review of radiology films, Dr. Bryla diagnosed Plaintiff with an exacerbation of a preexisting left-sided lumbosacral strain. *See id.* at 442. In his finding that plaintiff had a mild degree of disability based upon the New York State Workers' Compensation guidelines, Dr. Bryla stated that Plaintiff "has primarily subjective complaints of long duration with minimal physical findings. *See id.* It was Dr. Bryla's opinion that she could return to occupational duties with a 20-pound weight limitation. *See id.*

Dr. Bryla performed a reevaluation of Plaintiff on May 7, 2003, and, as a part of the material he reviewed, he had a medical report from Plaintiff's treating primary care physician, Dr. Pisaniello, dated December 6, 2002. *See id.* at 436-39. Within the report, there was a 20-pound lifting restriction but Dr. Pisaniello noted that Plaintiff was able to pick up her children who weighed forty-four and thirty-six pounds. *See id.* at 436-39. When asked, Plaintiff denied that she was able to lift either child. *See id.* Plaintiff also presented with an MRI report dated December 27, 2002, which stated that there was a developmental disc space narrowing with superimposed degenerative disc disease at the L5/S1 level but there was no evidence of disc herniation, the central canal and intervertebral foramina were adequate, and the remaining disc spaces were normal. *See id.* Dr. Bryla maintained his same diagnosis. *See id.* Dr. Bryla, in finding Plaintiff capable of returning to occupational duties with a 20-pound lifting restriction, stated again that Plaintiff had a mild disability with subjective findings, minimal physical findings, and radiological evidence of degenerative joint changes. *See id.*

Dr. Bryla performed a third independent medical examination on November 19, 2003, approximately one year from the initial exam. *See id.* at 431-35. Plaintiff reported that her symptoms were unchanged over the last six months despite chiropractic treatment. *See id.* Dr. Bryla maintained the same diagnoses and disability evaluation. It is noted at each of these three independent medical examinations that Plaintiff does not appear to be in any obvious distress, she does not have any issues getting in or out of a chair independently, and her gait appeared normal. *See id.* at 432, 437, 441.

Dr. Kalyani Ganesh completed an independent orthopedic examination on May 30, 2008. *See id.* at 420-22. After completing a documented physical examination of Plaintiff, Dr. Ganesh made the following observations: Plaintiff had no acute distress; Plaintiff had a normal gait;

Plaintiff can walk on her heels and toes without difficulty; Plaintiff did not require assistance changing for the exam or getting on and off the exam table; Plaintiff could rise from a chair without difficulty; Plaintiff could perform a full squat; Plaintiff did not use any assistive device; and Plaintiff's overall movements were "quite brisk." *See id.* On examination of Plaintiff's thoracic and lumbar spine, Dr. Ganesh found that Plaintiff had spinal and left paraspinal tenderness and left sciatic notch tenderness but did not find any spasm or trigger points. *See id.* There were no abnormalities found on examination of Plaintiff's cervical spine or upper and lower extremities. *See id.* Dr. Ganesh opines that Plaintiff had no limitations sitting, standing, or walking and that Plaintiff had mild limitations lifting, carrying, pushing, and pulling. *See id.*

The Court finds that the ALJ appropriately considered the required factors before giving little to no weight to the opinions of Drs. Taylor and Martinucci and that the ALJ's findings were supported by substantial evidence in the record. *See Tippie v. Astrue*, 791 F. Supp. 2d 638, 653 (N.D. Iowa 2011) (finding that substantial evidence supported ALJ's decision to discount opinion of treating physician where treating physician had only seen the plaintiff four times over the two years since alleged onset date). The ALJ was required to give "good reasons" in the decision for the weight afforded to a treating source's opinion, *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and, the case of Dr. Taylor and Dr. Martinucci, the Court finds that good reasons were given.

### 5. RFC Analysis

Plaintiff's last contention is that the ALJ made a blanket assertion that Plaintiff has the RFC for a full range of light work without engaging in a function-by-function analysis of her work-related abilities. *See* Dkt. No. 13.

> In determining a plaintiff's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including [a plaintiff's ability to sit, stand, walk, lift, carry, push, pull, reach,

> handle, stoop, crouch, a plaintiff's mental abilities, and any
> environmental limitations].  Only afer that may RFC be expressed
> in terms of the exertional levels of work, sedentary, light, medium,
> heavy, and very heavy."

*Wood v. Comm'n of Soc. Sec.*, No. 06-CV-157, 2009 WL 1362971, *6 (N.D.N.Y. May 14, 2009)

(quoting SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996)).  The Second Circuit declined to adopt

an "automatic remand rule" when the ALJ does not make an explicit function-by-function

analysis.  *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

> "The relevant inquiry is whether the ALJ applied the correct legal
> standards and whether the ALJ's determination is supported by
> substantial evidence.  Where an ALJ's analysis at Step Four
> regarding a claimant's functional limitations and restrictions affords
> an adequate basis for meaningful judicial review, applies the proper
> legal standards, and is supported by substantial evidence such that
> additional analysis would be unnecessary or superfluous . . . remand
> is not necessary merely because an explicit function-by-function
> analysis was not performed."

*Id.* (finding that "the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945

are only illustrative of the functions potentially relevant to an RFC assessment").  Requiring an

explicit analysis would "not necessarily ensure that all relevant functions are considered."  *Id.*

Within her decision, the ALJ reviewed the medical evidence including Plaintiff's

statements to providers, Plaintiff's work and social history, and Plaintiff's testimony, prior to

making a determination on Plaintiff's RFC.  *See* T. at 20-39.  The ALJ cited and accorded great

evidentiary weight to Dr. Ganesh's examination report, which stated that: Plaintiff had no acute

distress; Plaintiff had a normal gait; Plaintiff could walk on her heels and toes without difficulty;

Plaintiff did not require assistance changing for the exam or getting on and off the exam table,

Plaintiff could rise from a chair without difficulty; Plaintiff could perform a full squat; Plaintiff

did not use any assistive device; Plaintiff had a full range of motion in her upper and lower

extremities; and Plaintiff's overall movements were "quite brisk.".  *See id.* at 420-22.  Dr. Ganesh

concluded that Plaintiff did not have any limitations for sitting, standing, or walking and mild

limitations lifting, carrying, pushing, and pulling. *See id.* at 422. The ALJ accorded greater

weight to medical evidence from Dr. Bryla, who opined that Plaintiff was capable of returning to

full time occupational duties with only a lifting restriction of twenty to thirty pounds. *See id.* at

36-37, 434. The ALJ also gave Plaintiff's treating primary provider, physician assistant Andrew

Milone, the greatest evidentiary weight, and Mr. Milone place plaintiff on a forty-pound lifting

restriction. *See id.* at 36-37, 502.

Although, Plaintiff is correct that the ALJ does not list out physical capabilities in a

separate function-by-function analysis, the ALJ conducted a thorough examination of Plaintiff's

limitations and capabilities set forth in the record before determining that Plaintiff has the RFC to

performing a full range of light work.[4] Accordingly, the Court finds that the ALJ applied the

correct legal standards and that substantial evidence supports the RFC.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**;

and the Court further

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See* 20 C.F.R. § 1567(b).

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: March 26, 2015
       Albany, New York

Mae A. D'Agostino
U.S. District Judge